UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| **CECIL HOLLY,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) Civil Action No.: 1:24-cv-1512 |
| v. | ) |
| | ) |
| **RICHARD PAULK, in his Official** | ) |
| **Capacity as Commissioner of the** | ) |
| **Indiana Department of Workforce** | ) |
| **Development** | ) |
| | ) |
| **Defendant.** | ) |

## COMPLAINT FOR INJUNCTIVE RELIEF

Plaintiff, by counsel, for his Complaint against Defendant for injunctive relief states as follows:

### I.    INTRODUCTION

1. Cecil Holly is a fifty-six-year-old man with a significant history of injuries to his back and legs, and a lengthy career working for a variety of employers in a variety of fields in the State of Indiana. While he was employed, Holly and his employers regularly contributed to Indiana's Unemployment Insurance system. When he became unemployed and eligible for benefits, Holly collected the benefits to which he was entitled under the law.

2. On two separate occasions, in the mid-2010's, Holly was assessed an overpayment penalty for amounts he collected that the Indiana Department of Workforce Development determined that he was not owed. He paid the amounts back along with fines assessed by the Department that exceeded the amount he actually owed.

3. Despite his efforts to repay these benefits and his ultimate repayment of those benefits, Holly was treated differently by the Indiana Department of Workforce Development on claims he made beginning in 2020. These claims were scrutinized more strictly than other claimants and Holly was forced to endure more procedural hurdles than other claimants during this period.

4. These hurdles culminated in Holly being denied an ability to challenge the determination of his eligibility for supplemental pandemic benefits that should have been available during the 2020-2021 year. This denial of benefits occurred in October 2022.

5. Holly was not made aware of the procedure that he was now subject to and the Department, in fact, manipulated procedural mechanisms to ensure Holly could not collect the benefits to which he was entitled.

6. This denied him due process under the law.

## II. PARTIES

7. Cecil Holly is a United States Citizen who resides in Marion County. He has lived and worked in Indiana his entire adult life.

8. Defendant Richard Paulk is the Commissioner of the Indiana Department of Workforce Development and is a Defendant in this lawsuit for the purpose of the Plaintiff's request for injunctive relief.

## III. JURISDICTION AND VENUE

9. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331.

10. Venue is proper in this court under 27 U.S.C. § 1391(b)(1) and (2) as all acts complained of herein occurred in Marion County, Indiana.

## IV. FACTUAL ALLEGATIONS

11. Mr. Holly began his adult working career at Rent-A-Center doing collections and then worked as a store manager from 1992 through 2004.

12. Holly left Rent-a-Center and began working at American Investment Bank from 2004 through 2006, doing collections, and then moved to Premier Credit, where he worked in collections from 2007-2009.

13. In 2009, Holly voluntarily departed Premier Credit and took a position overseeing the installation of switches for telephone towers as an independent contractor for a variety of companies; he also performed a variety of temporary work.

14. In December 2013, Holly returned to Premier Credit and worked in collections until his termination in May 2019. At the time of his termination, Holly had recently returned to Premier from a major back surgery and was scheduled for a second surgery which took place in July 2019.

15. Mr. Holly filed his first claim for unemployment benefits in 2010 during a period of unemployment where he was not working as a contractor for the telecommunications installation or as a temp. He became injured while he was working for a temporary employer and applied for workers' compensation benefits. Mr. Holly continued to receive unemployment benefits while he was receiving workers' compensation benefits because he believed that since he was being paid less than his benefit amount in workers compensation benefits, he was still eligible for unemployment benefits.

16. After Mr. Holly became totally unemployed in 2011, he applied for unemployment benefits again and received those benefits on a sporadic basis up until August 2012. The maximum benefit he was receiving during this period was $74.00 per week and

some weeks he earned as little as $20.00. (One week he received $1.50) in unemployment benefits.

17. He resumed application for benefits in October 2013 and received benefits through the first period of 2014. For the first five months of 2014, while he was employed a Premier Credit, Holly continued to receive unemployment benefits and was notified of an overpayment with regards to these benefits in 2016. At the end of 2016, then, the state alleged that Mr. Holly had collected $7071.00 in benefits that he should not have and demanded a payment of $9996.00, which included penalties.

18. Holly was employed at Premier Credit until 2019, when he was terminated due to his back issues. After five years of garnishment by the Department of Workforce Development and a back pay payment associated with the end of his Premier Credit termination at the end of 2021, Holly paid back more than $15,506.44 to the Indiana Department of Workforce Development.

19. In total benefits, he received only $7071.00. In other words, Holly paid more than twice what he ever received in claimed overpayments from the state of Indiana.

20. In 2021-2022, Holly was employed part-time at Federal Express in Indiana but was forced to depart from his position due to an injury. However, during the period in which he worked at Federal Express, he was earning less than his maximum benefit amount which had been determined by the Department due to his prior employer

21. Accordingly, he was eligible for benefits during this period under both the standard DWD calculation and under the federal pandemic unemployment system.

22. Additionally, once he received a back pay award from the prior employer, his weekly benefit amount should have increased once the back pay award was properly

allocated to his earning history.

23. Holly challenged the allocation of the back pay, was denied by a Department of Workforce Development Administrative Law Judge and then appealed the denial to the Review Board of the Department of Workforce Development.

24. In the meantime, the Department issued a revised calculation of benefits which maintained the same back pay allocation but adjusted a different employer's wage contributions. The Review Board of the Department then dismissed his appeal as moot.

## V.   DENIAL OF DUE PROCESS

25. The State of Indiana, and its Director of Workforce Development Defendant Richard Paulk have an affirmative obligation to provide claimants with a fair process when considering their applications for benefits under Indiana's Unemployment Compensation System.

26. A fair process includes notice of any adverse action taken by the Department in connection with Cecil Holly's claim for benefits.

27. A fair process also includes a fair opportunity for Cecil Holly to challenge any adverse action taken by the state with regards to Holly's benefits.

28. Since at least October 2022, the Department of Workforce Development has made a determination to adjudicate Holly's claims for benefits differently than other claimants under the system.

29. This determination has resulted in a default presumption that Mr. Holly was not entitled to benefits.

30. This determination has also prevented him from having his claims adjudicated in a

fair manner.

31. Most recently, in October 2022, the Department of Workforce Development's adverse treatment of Mr. Holly resulted in the misallocation of back pay he received and reported to the State of Indiana.

32. Had the back pay been allocated correctly, Mr. Holly would have been eligible for additional supplemental pay from the federal government's unemployment supplements that existed during the COVID-19 pandemic.

33. Because of the state's treatment of Holly, his ability to challenge the allocation of this pay was thwarted because of the adverse decision to treat him differently from other applicants.

34. Because the state applied a default presumption against Mr. Holly without his knowledge, he has had no opportunity to challenge the application of this presumption.

35. This default presumption has impaired Mr. Holly's ability to collect benefits to which he was otherwise entitled and denied him the opportunity to collect benefits to which he was entitled during the pandemic.

36. The Department of Workforce Development's decision to apply this presumption and treat Holly differently from other applicants without his knowledge violates the 14th Amendment of the United States Constitution guarantee of Due Process under the law.

## VI.   REQUEST FOR RELIEFT

**Wherefore,** Holly request judgments in his favor and against the Defendant, ordering injunctive relief of recalculation of his entitlement to benefits, removal of the default presumption against

Holly at the Indiana Department of Workforce Development and other make whole relief including payment of benefits to which he was entitled, court costs and expenses, including attorney's fees, pre-judgment and post-judgment interest and such other relief as this Court deems appropriate.

Respectfully submitted,

**MACEY SWANSON LLP**

**/s Jeffrey A. Macey**
Jeffrey A. Macey, Atty # 28378-49
Attorney for Plaintiff
429 Pennsylvania Street, Suite 204
Indianapolis, IN 46204
jmacey@maceylaw.com
317-637-2345